**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| EVERS PHARMACY INC., d/b/a | § | |
| DAUBER PHARMACY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 3: 22-cv-2156-SPM |
| | § | |
| OPTUMRX, INC. successor by merger to | § | |
| Catamaran Corporation, and OPTUMRX, | § | |
| INC. in its own right, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT OPTUMRX, INC.'S MOTION TO DISMISS PLAINTIFFS'**
**COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

Michael J. Nester, #02037211
**Donovan Rose Nester, P.C.**
15 N. 1st St., Suite A
Belleville, IL 62220
Telephone: (618) 212-6500
mnester@drnpc.com

Geoffrey M. Sigler, *Pro Hac Vice pending*
Katherine Maddox Davis, *Pro Hac Vice pending*
**GIBSON DUNN & CRUTCHER LLP**
1050 Connecticut Ave, N.W.
Washington, DC 20036-5306
Telephone: (202) 887-3776
gsigler@gibsondunn.com
kdavis@gibsondunn.com

Michael Holecek, *Pro Hac Vice pending*
Brandon J. Stoker, *Pro Hac Vice pending*
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7018
mholecek@gibsondunn.com
bstoker@gibsondunn.com

*Counsel for Defendant OptumRx, Inc.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 2

    A.    The Parties and Their Contracts ............................................................. 2

    B.    The Parties' Disputes ............................................................................. 3

III. LEGAL STANDARDS ...................................................................................... 3

IV. ARGUMENT ..................................................................................................... 4

    A.    Venue in the Southern District of Illinois is Improper Because Plaintiffs Have Sued on Contracts with California and Minnesota Forum-Selection Clauses ................................................................................................... 4

    B.    This Court Lacks Personal Jurisdiction Over OptumRx with Respect to Plaintiff KM Network and Some of the Claims of Other Out-of-State Plaintiffs ............................................................................................... 6

        1.    The Court Lacks General Personal Jurisdiction Over OptumRx .............. 6

        2.    The Court Lacks Specific Personal Jurisdiction Over All of the Claims of KM Network and Some of the Claims of Other Plaintiffs ........ 7

    C.    Plaintiffs Have Failed to State a Claim for Which Relief May Be Granted ........ 11

        1.    Breach of Contract (Count I) ................................................................ 11

        2.    Breach of Duty of Good Faith and Fair Dealing (Count II) ................... 14

        3.    Conversion (Count III) ......................................................................... 15

        4.    California's Unfair Competition Law (Count IV) .................................. 16

        5.    State Statutory Violations (Counts VI–XXVIII) .................................... 16

V. CONCLUSION ................................................................................................. 20

## I.   INTRODUCTION

Defendant OptumRx, Inc. is a California-based pharmacy benefits manager ("PBM") that manages prescription-drug benefits.  Plaintiffs own pharmacies across the country and contracted with OptumRx to access its network of health plans and increase the pharmacies' customer base and revenues.  Plaintiffs claim that OptumRx breached the parties' contracts by allegedly under-reimbursing Plaintiffs.  But Plaintiffs refuse to abide by provisions in those *same contracts* that call for the parties to arbitrate any disputes in California or Minnesota.  Accordingly, OptumRx petitioned to compel arbitration in the Central District of California, and that petition is fully briefed.  Dozens of pharmacies in that case decided not to wait for a decision and instead sued OptumRx in two nearly-identical suits in Illinois state court, in an attempt to avoid federal court.[1] But Plaintiffs have both misidentified and misjoined parties, and added dozens of entities to their complaints that have no connection to Illinois.  For these reasons, and those discussed below, this action should be dismissed for improper venue.  At a minimum, KM Network, Inc., an out-of-state Plaintiff, and two categories of claims should be dismissed for lack of personal jurisdiction.

Even if venue were proper and personal jurisdiction existed, Plaintiffs' claims should be dismissed for failure to state a claim.  For starters, their claims for breach of contract (Count I) and breach of the duty of good faith and fair dealing (Count II) improperly seek to override the clear terms of the parties' agreement and impose new obligations that do not otherwise exist.  Their conversion claim (Count III) is likewise deficient as it fails to plead a specific, identifiable sum of money and is wholly duplicative of the breach of contract claim.  Nor do Plaintiffs state a claim under California's Unfair Competition Law ("UCL") (Count IV) as they have not pled an

---

[1] The two suits each involved just under 100 Plaintiffs, in an attempt to avoid removal under the Class Action Fairness Act, and include one allegedly California Plaintiff, in an attempt to destroy complete diversity.

inadequate remedy at law.  Finally, Counts VI through XXVIII must be dismissed because the state laws OptumRx allegedly violated do not provide a private right of action, apply to PBMs like OptumRx, or extend retroactively.

## II.   BACKGROUND

### A.   The Parties and Their Contracts

Plaintiffs operate pharmacies around the country (most of which are not in Illinois) that fill prescriptions for insured customers.  Dkt. 1-1 (Compl.) ¶¶ 1–91.  OptumRx is a California-based PBM that manages prescription drug benefits on behalf of health insurers.  *Id*. ¶¶ 94, 112–14.

Plaintiffs' relationship with OptumRx is governed by two contracts.  *First*, all Plaintiffs are parties to a Provider Agreement that gives them access to OptumRx's network of health plans. *Id*. ¶ 122.  All Plaintiffs use powerful contracting agents—called pharmacy services administrative organizations ("PSAOs")—to negotiate their Provider Agreements with OptumRx.  *See id.* ¶¶ 118, 120.   *Second*, all Plaintiffs are bound by the OptumRx Provider Manual, which explains how pharmacies submit claims and get paid for their claims.  Plaintiffs assert breach-of-contract claims against OptumRx based on the Provider Manual.  Dkt. 1-1 ¶¶ 219–61.

All relevant versions of the Provider Manual include a dispute resolution provision, which requires parties first to "work in good faith . . . to resolve any and all issues, disputes, or controversies between them."  *See, e.g.*, Declaration of Johana Arita in Support of OptumRx's Motion to Dismiss ("Arita Decl."), hereto attached as Exhibit 1, Ex. A at 133.  If, after written notice of the dispute, the parties are unable to resolve the dispute (or the procedures are not followed), a "party may commence an arbitration."  *Id.*  Under the current version of the Provider Manual, arbitration is to be held in Minnesota.  *See* OptumRx Pharmacy Provider Manual 2022 Version 4.1, https://bit.ly/3f9H7ek at 130 (last accessed Sep. 21, 2022).

**B.      The Parties' Disputes**

In December 2021, counsel for Plaintiffs notified OptumRx of pharmacies' disputes over OptumRx's reimbursement of prescription drugs.  Declaration of Michael Holecek in Support of OptumRx's Motion to Dismiss ("Holecek Decl."), hereto attached as Exhibit 2, Exs. A, B. When OptumRx informed Plaintiffs of their obligation to arbitrate their disputes, Plaintiffs refused and stated they would only resolve the disputes in court.  *Id.* ¶ 4.

OptumRx then filed petitions to compel arbitration against nearly all the Plaintiffs in the Central District of California and the California Superior Court, County of Orange.  *See OptumRx, Inc. v. A & S Drugs LLC, et al.*, No. 8:22-cv-00468-FLA (C.D. Cal.); *OptumRx v. Odedra Enters., Inc., et al.*, No. 30-2022-01252611-CU-PT-CJC (Cal. Super. Ct.).  Those petitions are pending.

On August 2, 2022, Plaintiffs filed a complaint in the Circuit Court of St. Clair County, Illinois.  On the same day, counsel for Plaintiffs filed a virtually identical complaint for 95 other pharmacies in that same court, entitled *B.W.E. & T.M.E., Inc. d/b/a Millstadt Pharmacy, et al. v. OptumRx, Inc.*  OptumRx removed both actions to this Court on September 14, 2022.

## III.      LEGAL STANDARDS

**Improper Venue**.  A complaint filed in an improper venue is subject to dismissal.  Fed. R. Civ. P. 12(b)(3).  The Seventh Circuit therefore follows the "majority rule" that a "motion seeking dismissal based on a forum selection clause, including an arbitration clause, is better conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3)."  *Auto. Mechs. Loc. 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007).  Once challenged, plaintiffs "bear[] the burden of establishing that venue is proper."  *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 787 (N.D. Ill. 2013).

**Lack of Personal Jurisdiction**.  Federal Rule of Civil Procedure 12(b)(2) requires dismissal of claims where the court lacks personal jurisdiction.  "Once a defendant has moved for

a dismissal based on the lack of personal jurisdiction, 'the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015) (quotation marks omitted).  If the defendant has submitted evidence in opposition to jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 782–83.

**Failure to State a Claim**.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff "may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006).

## IV.   ARGUMENT

**A.   Venue in the Southern District of Illinois is Improper Because Plaintiffs Have Sued on Contracts with California and Minnesota Forum-Selection Clauses**

Plaintiffs filed suit against OptumRx for breach of the Provider Manual, but the Provider Manual includes a forum-selection clause that requires all disputes to be arbitrated in either California or Minnesota (depending on the applicable version).  That forum-selection clause renders venue improper in this Court and requires dismissal of their complaint.

In *Continental Casualty Co. v. American National Insurance Co.*, 417 F.3d 727 (7th Cir. 2005), the Seventh Circuit affirmed the dismissal of an action based on a contract that called for arbitration outside of the judicial district.  Because "the Federal Arbitration Act forbids the district court to compel arbitration outside the confines of the district," the court held that the suit was correctly dismissed for improper venue.  *Id*. at 735.  Other cases are in accord.  *See Dental USA, Inc. v. Beak & Bumper, LLC*, 2014 WL 683709, at *3 (N.D. Ill. Feb. 21, 2014) ("dismissal under Rule 12(b)(3)" "is appropriate when an agreement [that governs the dispute] requires arbitration

in another district"); *Molton, Allen & Williams, LLC v. Continental Cas. Ins. Co.*, 2010 WL 780353, at *9 (N.D. Ill. Mar. 3, 2010) (dismissal proper under Rule 12(b)(3) "where a party files suit outside the district in which arbitration is required to occur"); *Ferenc v. Brenner*, 927 F. Supp. 2d 537, 542 (N.D. Ill. 2013) (similar); *see also Merrill Lynch v. Lauer*, 49 F.3d 323, 328–29 (7th Cir. 1995) (reversing district court and holding that federal courts may not engage in "parallel proceedings" where the parties have agreed to arbitrate in a different forum).

Here, all versions of the Provider Manual from 2015 until 2022 (Version 3.1) include a provision requiring the parties to arbitrate their disputes in Los Angeles or Orange County, California. *See, e.g.*, Dkt. 1-1 Ex. A at 213; Arita Decl. Ex. A at 133.  As of 2022 (Version 3.1)— the version at issue when this case was filed—the Provider Manual has required the parties to arbitrate in Hennepin County, Minnesota.  *See* Arita Decl. Ex. B at 131; OptumRx Pharmacy Provider Manual 2022 Version 4.1, https://bit.ly/3f9H7ek at 130 (last accessed Sep. 21, 2022).

Plaintiffs cannot sue OptumRx under the Provider Manual but then disavow the arbitration agreement's forum-selection clause in that same contract.  *See Hughes Masonry Co., Inc. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 841 (7th Cir. 1981) (plaintiff was "estopped from repudiating the arbitration clause" of agreement he relied on in his claims against defendant); *Gernsten v. Intrinsic Techs., LLP*, 442 F. Supp. 2d 573, 579 (N.D. Ill. 2006) (similar).  In fact, in *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894 (S.D. Ill. 2012), minor plaintiffs who allegedly *lacked capacity* to agree to Facebook's terms of service were still bound by the forum-selection clause therein because they sued under those terms of service.  *Id.* at 900; *see also Camp v. TNT Logistics Corp.*, 2006 WL 91318, at *2 (C.D. Ill. Jan. 12, 2006) (dismissing complaint because a party cannot "have its cake and eat it too" by suing on a contract and disavowing its arbitration clause).  Because Plaintiffs have sued OptumRx under contracts that require arbitration

in California or Minnesota, their complaint should be dismissed for improper venue.

**B.      This Court Lacks Personal Jurisdiction Over OptumRx with Respect to Plaintiff KM Network and Some of the Claims of Other Out-of-State Plaintiffs**

Under Illinois law, personal jurisdiction can be exercised only to the extent permitted by the Due Process Clause of the United States Constitution.  *See Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1779 (2017); 735 Ill. Comp. Stat. 5/2–209(c). Accordingly, "the state statutory and federal constitutional inquiries merge."  *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

There are two types of personal jurisdiction: "general or all-purpose jurisdiction and specific or case-linked jurisdiction."  *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 19.   By alleging that OptumRx is a California citizen, Plaintiffs concede that this Court lacks general jurisdiction over OptumRx.  The Court lacks specific personal jurisdiction over OptumRx with respect to all of the claims of Plaintiff KM Network because it resides outside of Illinois, never submitted claims to OptumRx's Illinois-based predecessor (Catamaran Corporation), and only submitted claims after February 2018.  The Court also lacks specific personal jurisdiction over two categories of *claims*: (1) claims submitted to OptumRx before the merger with Catamaran in 2015; and (2) claims submitted to OptumRx for processing after February 2018, by which time OptumRx had migrated all claims adjudication and decision-making personnel out of Illinois.  The Court should dismiss these categories of claims.

**1.      The Court Lacks General Personal Jurisdiction Over OptumRx**

A corporation is "essentially at home" in the states in which it is incorporated and maintains its principal place of business.  *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 19.  As Plaintiffs recognize, *see* Dkt. 1-1 ¶ 94, OptumRx is incorporated in California, where it also has its principal place of business, Declaration of Christian J. Bongartz in Support of OptumRx's Motion to Dismiss

("Bongartz Decl."), hereto attached as Exhibit 3, ¶ 2.  Because OptumRx is neither incorporated in nor has its principal place of business in Illinois, this Court lacks general personal jurisdiction over OptumRx.

### 2. The Court Lacks Specific Personal Jurisdiction Over All of the Claims of KM Network and Some of the Claims of Other Plaintiffs

A court may exercise specific personal jurisdiction over a defendant where the defendant has "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'"  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).

The Supreme Court recently clarified that this means the plaintiff's claim must "aris[e] out of or relat[e] to the defendant's contacts with the *forum*."  *Bristol-Myers Squibb*, 137 S. Ct. at 1780.  In particular, there must be "a connection between the forum and the specific claims at issue."  *Id.* at 1781.  Accordingly, where a plaintiff cannot show that its claim arises out of or relates to the defendant's contacts with the forum, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected [*i.e.*, non-suit related] activities in the State."  *Id.*  This analysis must be evaluated on a claim-by-claim basis for each plaintiff.  *Id.*

For example, in 2017, the Supreme Court held that the California Supreme Court had erred in finding personal jurisdiction over a defendant with respect to claims brought by non-California plaintiffs.  *Id.*  The Court found that although the same mass action included similar claims brought by California plaintiffs, and the defendant had other ongoing operations in California, these facts were not "relevant" and did not provide an "adequate link between the State and the nonresidents' claims."  *Id.* at 1782.  Accordingly, the defendant's California contacts were an "insufficient basis for jurisdiction" with respect to the non-California plaintiffs' claims.  *Id*. at 1782–83.

Further, when a plaintiff brings multiple claims, the court must determine whether it has jurisdiction with respect to each claim. "[I]f separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim." *Sunny Handicraft (H.K.) Ltd. v. Edwards*, 2017 WL 1049842, at *4 (N.D. Ill. Mar. 20, 2017) (quoting Wright & Miller, Federal Practice & Procedure. § 1351); *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) ("if a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim").

Here, OptumRx had negligible contacts with Illinois relevant to this case, and those contacts are insufficient for specific personal jurisdiction. *First*, in 2015, OptumRx acquired and merged with Catamaran, an Illinois company. Bongartz Decl. ¶ 4. OptumRx survived as the successor entity; Catamaran has not existed for over seven years. *Id.* ¶ 5. *Second*, for a short period after the merger, OptumRx processed some claims for reimbursements in Illinois. *Id.* ¶ 7. By February 2018, OptumRx had completely transitioned its claims processing and decision-making personnel out of Illinois. Bongartz Decl. ¶ 8. Since then, all claims (whether OptumRx's clients or Catamaran's legacy clients) have been processed by OptumRx in Minnesota.[2] *Id.*

A large number of the out-of-state (i.e., non-Illinois) Plaintiffs' claims have no connection to OptumRx's limited contacts with Illinois; and for Plaintiff KM Network, *none* of its claims is

---

[2] Plaintiffs allege that "all the major operations and decisions described in th[e] complaint" took place in Illinois. Dkt. 1-1 ¶ 95. This is false. In fact, before the merger in 2015, none of the operations or decisions relating to the adjudicating of pharmaceutical benefit claims by OptumRx were ever made by personnel in Illinois. Bongartz Decl. ¶ 6. And, by February 2016, the management of the claims adjudication process for which used legacy Catamaran hardware and software was based out of OptumRx's Minnesota office. *Id.*

connected to Illinois.  This Court lacks specific personal jurisdiction over those claims.[3]

        **a.**     **The Court Lacks Personal Jurisdiction Over All of the Claims of Plaintiff KM Network**

Where, as here, numerous plaintiffs jointly bring a complaint, the plaintiffs over whose claims the court lacks personal jurisdiction must be dismissed from the action.  *See BeRousse v. Janssen Rsch. & Dev., LLC*, 2017 WL 4255075, at *4 (S.D. Ill. Sept. 26, 2017) (dismissing "the non-Illinois plaintiffs" because "all conduct giving rise to the non-Illinois plaintiffs' claims occurred elsewhere"); *see also Rios*, 2020 IL 125020, ¶ 28 (similar).

Here, KM Network is incorporated in California and operates Courtyard Pharmacy, a California-based pharmacy.  Dkt. 1-1 ¶ 44.  KM Network only ever submitted reimbursement claims to OptumRx; it never submitted claims relating to the legacy Catamaran clients.  Bates Decl. ¶ 6.  And KM Network's earliest claims submitted to OptumRx occurred after February 2018, *id.*, by which time OptumRx had moved all of its claim processing systems and personnel out of Illinois.  *See* Bongartz Decl. ¶ 8.  Since KM Network is not based in Illinois and interacted solely with OptumRx, and since all of the alleged harm took place outside of Illinois, there is no "connection between the forum and the specific claims at issue," and KM Network should be dismissed for lack of personal jurisdiction.  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781; *Lishman v. Air & Liquid Sys. Corp.*, 2022 WL 1085163, at *3 (N.D. Ill. Apr. 11, 2022) (finding no jurisdiction despite the fact that the defendant "possessed manufacturing plants in Illinois" because " the record show[ed] that its Illinois manufacturing efforts were not for the product at issue here").

---

[3] 15 Plaintiffs, to the best of OptumRx's knowledge, appear to operate Illinois-based pharmacies at issue in this action.  *See* Declaration of Heather Bates in Support of OptumRx's Motion to Dismiss ("Bates Decl."), hereto attached as Exhibit 4, ¶¶ 4–5. To the extent any of these Plaintiffs' pharmacies are found not to be based in Illinois, OptumRx reserves the right to challenge this Court's personal jurisdiction with respect to those Plaintiffs' claims.

### b. The Court Lacks Personal Jurisdiction Over OptumRx with Respect to All Out-of-State Plaintiffs' Claims After February 2018

When a court lacks personal jurisdiction over a defendant with respect to certain claims, those *claims* must be dismissed. *Bristol-Myers Squibb*, 137 S. Ct. at 1781; *Abelesz v. OTP Bank*, 692 F.3d 638, 661 (7th Cir. 2012) (dismissing "claims" for lack of personal jurisdiction).

Here, there are 70 out-of-state Plaintiffs that submitted reimbursement claims to OptumRx after February 2018. Bates Decl. ¶ 5. But by February 2018, OptumRx had moved all of its remaining claims processing systems and personnel out of Illinois. *See* Bongartz Decl. ¶ 8. That means OptumRx has had no contacts with Illinois with respect to claims processing—the subject of Plaintiffs' complaint—after February 2018. Accordingly, for these Plaintiffs, this Court lacks personal jurisdiction over OptumRx with respect to all reimbursement claims after February 2018. *See Sunny Handicraft*, 2017 WL 1049842, at *6, *9 (dismissing two of four counts because, while there was jurisdiction over some of plaintiffs' claims, the plaintiffs failed to prove "personal jurisdiction over Defendants with respect to their claims for fraud and breach of fiduciary duty").

### c. The Court Lacks Personal Jurisdiction Over OptumRx with Respect to All Out-of-State Plaintiffs' Claims Submitted to OptumRx Before Its Merger with Catamaran

There are also 70 out-of-state Plaintiffs that submitted reimbursement claims to OptumRx under OptumRx contracts before its merger with Catamaran in July 2015. Bates Decl. ¶ 7. These reimbursement claims have no connection to Catamaran or Illinois. *See* Bongartz Decl. ¶ 3; Dkt. 1-1 ¶ 96 ("For the Optum line of business, claims were processed through Optum's pre-existing facilities in California and Minnesota."). Accordingly, this Court lacks personal jurisdiction over OptumRx with respect to all such reimbursement claims. *See Sunny Handicraft*, 2017 WL 1049842, at *6, *9.

-10-

**C.     Plaintiffs Have Failed to State a Claim for Which Relief May Be Granted**

Plaintiffs' claims must also be dismissed with prejudice under Rule 12(b)(6) as they are legally deficient and bereft of factual support.

**1.     Breach of Contract (Count I)**

Plaintiffs allege that OptumRx breached its contracts by, *inter alia*, (1) "failing to reimburse Plaintiffs for their reasonable acquisition costs," Dkt. 1-1 ¶ 239; (2) "classifying drugs as 'brand name' when charging health insurance plans while classifying the same drug as 'generic' when paying pharmacy providers such as Plaintiffs," *id.* ¶¶ 220, 245–47; (3) "[m]aintaining multiple different MAC price lists for different pharmacy providers," *id.* ¶¶ 104, 230–34; and (4) failing to update MAC prices "at least every seven days," *id.* ¶¶ 174–79, 228.  Because Plaintiffs cannot show that OptumRx "actually breached" any express provisions of the parties' agreement, the Court should dismiss these claims.  *Belsky v. Field Imports, Inc.*, 2013 WL 5819232, at *5 (N.D. Ill. Oct. 29, 2013); *see also*, *e.g.*, *Sousanis v. Nw. Airlines, Inc.*, 2000 WL 34015861, at *4 (N.D. Cal. Mar. 3, 2000).[4]

*First*, Plaintiffs do not identify any contractual term requiring OptumRx to reimburse the acquisition costs of prescription drugs.  Dkt. 1-1 ¶¶ 235–39.  Instead, they simply opine that OptumRx's commitment to provide *some* reimbursement "logically requires that, at a minimum, it repay or 'reimburse' . . . pharmacies for their costs."  *Id.* ¶ 236.  But so-called "logic" is no substitute for binding contractual terms.  *See NLRB v. Int'l Broth. of Elec. Workers, Local Union 16, AFL-CIO*, 425 F.3d 1035, 1040 (7th Cir. 2005) ("When interpreting a contract, we cannot read terms into the language that are not expressly stated[.]").  As Plaintiffs recognize, *see* Dkt. 1-1

---

[4] Although California law applies to Plaintiffs' claims arising under the 2015 and 2020 OptumRx Provider Manual, *see* Dkt. 1-1 Ex. A at 114; *id.* Ex. B at 120, dismissal is required under either California or Illinois law.

¶¶ 132, 135, the parties agreed that OptumRx would provide reimbursement at the "lesser of" Maximum Allowable Cost ("MAC") and several other metrics.  *See id.* Ex. B at 45; Ex. C at 4–5. When determining MAC, OptumRx may consult a wide variety of sources, including, but not limited to, "market pricing benchmark data," "wholesaler information on market availability," and pharmacies' "actual acquisition cost[s]."  *Id.* Ex. A at 16, 51; *id.* Ex. B at 18, 54–55; *id.* Ex. C at 5.  Nothing in the Provider Manual, however, requires OptumRx to reimburse those acquisition costs.  That makes sense:  OptumRx should not have to bear the risk of a pharmacy's ill-advised purchase on the open market.

*Second*, no contractual provision bars OptumRx from allegedly reimbursing pharmacies at a generic MAC price, while billing health insurance plans at a brand price.  Dkt. 1-1 ¶¶ 240–47. Plaintiffs point to language in the Provider Manual directing OptumRx to "use [c]lient or plan parameters, Medi-Span or other national resource, and internal processes as a reference, but not as the sole determinant" of "brand or generic medication classification."  *Id.* ¶ 241; *see id.* Ex. A at 12; *id.* Ex. B at 14; *id.* Ex. C at 5.  But that provision is silent on whether OptumRx must use the *same* classification in its dealings with health insurance plans as with pharmacy providers.  *See Robert D. Mabe, Inc. v. Optum RX*, 2021 WL 2184764, at *6 (M.D. Pa. May 28, 2021) (dismissing identical breach of contract claim), *vacated in part on other grounds*, 43 F.4th 307 (3d Cir. 2022).

Plaintiffs also failed to plead that OptumRx's purported misclassification of brand name drugs caused them any compensable loss—an independent basis for dismissal.  They merely state that OptumRx's alleged manipulation of the MAC lists "results in enormous spreads for Defendant," Dkt. 1-1 ¶ 243, but black-letter law dictates that "the measure of damages for breach of contract is the plaintiff's *losses*, not the defendant's *profits*," *Illinois Tamale Co. v. El-Greg, Inc.*, 2019 WL 4395139, at *14 (N.D. Ill. Sept. 13, 2019) (emphasis added); *Sarieddine v. D&A*

-12-

*Distribution, LLC*, 2018 WL 5094937, at *2 (C.D. Cal. Apr. 6, 2018) (same).

*Third*, Plaintiffs have not shown that the Provider Manual requires OptumRx to "employ a single universal MAC list for each provider participating in that particular health plan." Dkt. 1-1 ¶¶ 173, 230–34. Plaintiffs' only basis for this legal conclusion is that the term "maximum" means "'greatest,' 'highest,' or 'most.'" *Id.* ¶ 231. But that does not answer the question here whether the *same* MAC list must apply to *all* pharmacies within a given health plan. Plaintiffs identify no provision so requiring. To the contrary, the Provider Manual contemplates that different MAC prices may apply to a particular health plan. The 2013 Provider Manual, for example, stated that "[t]he network and associated rates in the Provider Agreement may or may not be utilized by Catamaran clients," which instead "may utilize ***alternative*** networks or reimbursement as determined by Catamaran." Dkt. 1-1 Ex. C at 4 (emphasis added). Similarly, the 2015 and 2020 Provider Manuals state that a "Network Pharmacy Provider is subject to any **MAC list(s)** associated with the network(s) in which [the] Network Pharmacy Provider participates." *Id.* Ex. A at 51 (emphasis added); *id.* Ex B at 55.[5]

*Fourth*, OptumRx has no obligation to update MAC prices "at least every seven days" as Plaintiffs contend. Dkt. 1-1 ¶¶ 174–79, 228. Rather, the Provider Manual states that MAC "may be amended ***at any time*** at [OptumRx's] sole discretion." *Id.* Ex. C at 5 (emphasis added); *see also id.* Ex. A at 16 (MAC "may be amended from ***time-to-time*** at [OptumRx's] sole discretion" (emphasis added)); *id.* Ex. B at 18 (same). Plaintiffs' claims accordingly fail to the extent they seek to foist new obligations on OptumRx that have no basis in the parties' agreement.

---

[5] Plaintiffs' representation that the Provider Manual refers to MAC only in the "singular," Dkt. 1-1 ¶ 230, is simply not true. *See, e.g.*, Dkt. 1-1 Ex. A at 16, 51 ("[s]uch **MAC price lists** constitute confidential information" (emphasis added)); *id.* Ex. B at 18, 54 (same); *id.* Ex. A at 23 (explaining how "[t]o review the summary and guidelines for appealing **MAC prices**/pharmacy reimbursement" (emphasis added)); *id.* Ex. B at 25 (same).

## 2. Breach of Duty of Good Faith and Fair Dealing (Count II)

Plaintiffs similarly fail to state a claim for breach of the covenant of good faith and fair dealing. Dkt. 1-1 ¶¶ 180–88, 262–89. The covenant "does not allow a party to read an obligation into a contract that does not exist." *Suburban Ins. Servs., Inc. v. Virginia Sur. Co., Inc.*, 322 Ill. App. 3d 688, 693 (2001). Rather, "parties to a contract are entitled to enforce its terms to the letter." *Id.*; *see also Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349–50 (2000) (similar).

Here, Plaintiffs allege that OptumRx breached the duty of good faith by improperly applying "a wholesale price as its benchmark for setting MAC prices . . . even when it was substantially below" other national references. Dkt. 1-1 ¶¶ 273–76. Once again, Plaintiffs do not identify any contractual basis for this alleged duty. While MAC prices may account for a variety of sources, *see supra* at 20, the Provider Manual does not specify how those sources are to be weighed, and the duty of good faith and fair dealing "cannot be used to create additional contractual terms." *Lansing v. Carroll*, 868 F. Supp. 2d 753, 762 (N.D. Ill. 2012).

Plaintiffs further state that OptumRx breached the covenant by refusing to "pay the increased price" on the transaction at issue in a successful MAC appeal and to adjust the price for "all similarly situated pharmacies within one calendar day of the date of determination." Dkt. 1-1 ¶¶ 184, 277, 281, 288. Here, too, the Provider Manual imposes no such obligations for *all* MAC appeals, which differ depending on the state where the pharmacy is located. *Id.* Ex. A at 51; *id.* Ex. B at 55. For example, while pharmacies in California and Kansas may be entitled to price adjustments on the transaction at issue and for similarly situated appeals, *see id.* Ex. B at 146, 148, pharmacies in Arizona and Vermont are not, *see id.* Ex. A at 51–52, 55; *id.* Ex. B at 146, 153. Because Plaintiffs seek to "overrule or modify the express terms of [the Provider Manual]" by invoking the covenant of good faith and fair dealing, *Suburban Ins. Services*, 322 Ill. App. 3d at 693, the Court should dismiss Count II.

-14-

### 3.      Conversion (Count III)

Plaintiffs' conversion claim fails for at least two independent reasons.  Dkt. 1-1 ¶¶ 290–98.  *First*, it is well established that "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1491 (2006).  Conversion claims are properly dismissed where, as here, the plaintiff fails to identify the specific amount of money in dispute or to allege that it was "segregated from other money, placed in an exclusive account, or otherwise made distinctive." *Divane v. Comtel Techs., Inc.*, 2003 WL 22247177, at *2 (N.D. Ill. Sept. 29, 2003); *see also*, *e.g.*, *McCammon-Chase v. Circle Family Care, Inc.*, 2010 WL 2925893, at *6 (N.D. Ill. July 23, 2010) (dismissing conversion claim where plaintiff estimated that damages were "upwards of $400,000"); *Care Plus Ins. Mktg. v. Conn. Gen. Life Ins. Co.*, 2010 WL 5394772, at *4 (E.D. Cal. Dec. 21, 2010) (similar).  Because Plaintiffs make no effort to specify the sum allegedly converted, their "generalized claim for money" is "not actionable as conversion." *Vu v. Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229, 235 (1997).

*Second*, the conversion claim fails because it is "nothing more than a restatement of [Plaintiffs'] breach-of-contract claim." *Schlessinger v. Chi. Hous. Auth.*, 2013 WL 2434704, at *9 (N.D. Ill. June 3, 2013).  The claim is premised solely on Plaintiffs' allegation that OptumRx improperly "claw-back[ed] . . . reimbursements" for prescription drugs.  Dkt. 1-1 ¶¶ 291–94.  It thus "merely restate[s]" their breach of contract claim for retroactive deductions and should be dismissed as superfluous. *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1058 (N.D. Cal. 2021); *see* Dkt. 1-1 ¶¶ 248–61.[6]

---

[6] Plaintiffs' conversion claim is also deficient under Illinois law because they do not allege that "the money in question belonged to [them] at all times." *Schlessinger*, 2013 WL 2434704, at *9.  On the contrary, Plaintiffs aver that the money was "paid to them by [OptumRx]."  Dkt. 1-1 ¶ 291.

### 4.      California's Unfair Competition Law (Count IV)

Plaintiffs' UCL claim for restitution and disgorgement fails as a matter of law because Plaintiffs do not allege that they lack an adequate legal remedy.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL"); *see* Dkt. 1-1 ¶¶ 299–308.  Far from it:  They repeatedly claim they are entitled to damages.  Their UCL claim should therefore be dismissed.  *See*, *e.g.*, *Wyant v. Dude Prod., Inc.*, 2022 WL 621815, at *2 (N.D. Ill. Mar. 3, 2022) ("Because Plaintiffs do not allege that they lack an adequate remedy at law, their claims for restitution and disgorgement (Counts II and III) are dismissed."); *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *2–3 (N.D. Cal. Mar. 29, 2021) (same).

### 5.      State Statutory Violations (Counts VI–XXVIII)

#### i.      Plaintiffs Lack A Private Right of Action For Counts VI–XXVIII

In Counts VI–XXVIII, Plaintiffs allege violations of various state statutes concerning prescription-drug reimbursements, MAC pricing, and whether health insurance carriers must accept certain providers into their networks (known as "Any Willing Provider" requirements). Because these state laws do not provide a private right of action against PBMs like OptumRx, the Court should dismiss these Counts.

A claim is properly dismissed where it is predicated on a statute that does not afford a private right of action.  *See Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 468 (1999) (affirming dismissal of a complaint that failed to establish a private right of action); *see also Abbasi ex rel. Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 397 (1999) (same).  In this case, only four of the statutes listed in Counts VI–XXVIII provide a private right of action *at all*, and of those four, only two (Arizona's) apply to claims against PBMs, *see* A.R.S. §§ 20-3331; 20-3332 (Count VII). The other two statutes that have a private right of action (Mississippi's and North Carolina's)

-16-

provide a claim for injunctive relief against health benefit plans, *not* PBMs like OptumRx.  *See* Miss. Code section 83-9-6 (Count XX); NC ST § 58-51-37 (Count XII).[7]

As courts have universally concluded, the remaining state statutes do not give private parties either an express or an implied private right of action against PBMs.  *See, e.g.*, *Trilogy Health Care, LLC v. Medco Health Sols., Inc.*, 2013 WL 4832708, at *2 (D.N.J. Sept. 10, 2013) (there is not "even a colorable argument that . . . a particular 'Any Willing Provider' statute . . . gives rise to a private right of action against a pharmacy benefits manager"); *HM Compounding Servs., Inc. v. Express Scripts, Inc.*, 2015 WL 4162762, at *16 (E.D. Mo. July 9, 2015) (dismissing Any Willing Provider claim "on the grounds that the statute does not give rise to a private right of action against a PBM").

To the extent Plaintiffs suggest that the parties incorporated these laws into their contracts through general references in the Provider Manuals, *see, e.g.*, Dkt. 1-1 ¶¶ 321–22, this likewise does not grant them a private right of action to bring their statutory claims.  Under Illinois law, general references in contracts to applicable law do not permit parties to convert alleged statutory violations into breach-of-contract claims—and thus sidestep the absence of a private right of action in the statute itself.  *See Leszanczuk v. Carrington Mortg. Servs., LLC*, 21 F.4th 933, 938–39 (7th Cir. 2021) (plaintiffs cannot enforce regulatory requirements through breach of contract claim because the "contract d[id] not evince an intent to incorporate" and "a document is incorporated by reference into the parties' contract only if the parties intended its incorporation").[8]  And courts

---

[7] While NC ST § 58-51-37 "appl[ies] to pharmacy benefits managers with respect to 340B covered entities and 340B contract pharmacies," Plaintiffs do not and cannot plead that such circumstances exist here.

[8] *See also Dochak v. Polskie Linie Lotnicze LOT S.A.*, 189 F. Supp. 3d 798 (N.D. Ill. 2016) (similar); *Hartford Fire Ins. Co. v. Henry Bros. Constr. Mgmt. Servs., LLC*, 2011 WL 3563138, at *6 (N.D. Ill. Aug. 10, 2011) (similar); *Hayes v. M & T Mortg. Corp.*, 389 Ill. App. 3d 388, 390–91 (1st Dist. 2009).

nationwide have consistently applied the same rule in dismissing claims like those Plaintiffs assert here.[9]  This Court should do likewise and dismiss Counts VI–XXVIII to the extent Plaintiffs invoke statutes that do not provide a private right of action against OptumRx.

> ii. **The "Any Willing Provider" Laws in Counts VI, XI, XII, XX, XXI, XXVI, and XXVII Do Not Apply to OptumRx**

Many of Plaintiffs' claims also fail because the state statutes they allege OptumRx violated do not apply to PBMs like OptumRx.  As part of Counts VI, IX, XI, XII, XIII, XX, XXI, XXVI, and XXVII, Plaintiffs allege that OptumRx violated "Any Willing Provider" laws in Illinois, Oklahoma, Tennessee, North Carolina, Vermont, Mississippi, North Dakota, Virginia, and South Carolina.  Specifically, Plaintiffs allege that, under each law, (1) "health insurance carriers [must] allow providers to be accepted into networks if the provider is willing to accept the conditions of network membership set by the carrier," *e.g.*, Dkt. 1-1 ¶ 327; (2) "health insurance plan[s] must pay each participating pharmacy the same amount, since all providers are participating in the network under the same terms and conditions," *e.g.*, *id*. ¶ 328; and (3) "Defendant has violated [the Any Willing Provider law] by routinely refusing to pay each participating pharmacy the same amount it pays to large chains and its own mail order pharmacy," *e.g.*, *id*. ¶ 329.

Yet only two of these laws (Oklahoma's and Vermont's) apply to PBMs like OptumRx.  *See* 15 Okl.St.Ann. § 788(C); V.T. Stat. tit 8 § 4089j.  The Any Willing Provider laws cited in Counts VI, XI, XII, XX, XXI, XXVI, and XVII do not apply to PBMs, and instead expressly apply

---

[9] *See, e.g.*, *Elliot Plaza Pharmacy, LLC v. Aetna U.S. Healthcare, Inc.*, 2009 WL 702837, at *3 (N.D. Okla. Mar. 16, 2009) ("[I]ncorporation of the [Oklahoma law] into the contract cannot somehow create a private right of action that does not exist in the unincorporated statute."); *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 794 (5th Cir. 2014) (similar); *Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1086 (8th Cir. 2012) (similar).

to other types of entities, such as health insurance carriers, health plans, and/or health maintenance organizations.[10]

Courts across the country have concluded the same. *See CZ Servs., Inc. v. Express Scripts Holding Co.*, 2020 WL 4368212, at *6 (N.D. Cal. July 30, 2020) (collecting cases and holding that "PBMs are not within the scope of AWP statutes unless specifically included"); *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 519 (8th Cir. 2018) ("[Plaintiff] has pointed to no case law that suggests that [Any Willing Provider laws in Georgia, Mississippi, and North Carolina] apply to PBMs, and we decline to extend the reach of these laws to PBMs as a matter of first impression"); *Trilogy Health Care*, 2013 WL 4832708, at *2 (there is not "even a colorable argument that . . . a particular 'Any Willing Provider' statute applies . . . against a pharmacy benefits manager . . . rather than an insurer"); *HM Compounding Servs.*, 2015 WL 4162762, at *13 (dismissing claim because New Jersey's Any Willing Provider law did not apply to PBM).

Here, Plaintiffs allege that both Catamaran and OptumRx are PBMs. Dkt. 1-1 ¶ 92. Plaintiffs do not allege that Catamaran and OptumRx are the types of entities that the Illinois, Tennessee, North Carolina, Mississippi, North Dakota, Virginia, and South Carolina laws apply to. Accordingly, this is an additional reason to dismiss Counts VI, XI, XII, XX, XXI, XXVI, and XXVII.

---

[10] *See* 215 ILCS 134/72 (applies to "health care plans"); TN ST § 56-7-117 (applies to "group medical benefit contract[s] issued by an insurance company, a hospital service corporation, a hospital and medical service corporation, a medical service corporation, a health maintenance organization or a health care center"); *id*. § 56-7-2359 (applies to "health insurance issuer" and "managed health insurance issuer"); NC ST § 58-51-37 (applies to "health benefit plans"); Miss. Code Ann. § 83-9-6 (applies to "health benefit plans"); ND ST § 26.1-36-12.2 (applies to "third-party payer[s], including a health care insurer"); VA Code Ann. § 38.2-3407.7 (applies to "insurer[s]"); SC ST § 38-71-147 (applies to "individual or group accident and health or health insurance policy or a health maintenance organization plan").

### iii.   Plaintiffs' Claims Unlawfully Require Retroactive Application of State Laws

Counts XI–XXVIII should be dismissed to the extent they seek retroactive application of state statutes that did not exist at the time of the claims at issue.  Plaintiffs assert the claims began on "January 1, 2013," Dkt. 1-1 ¶¶ 104, 221, 224, yet many of the statutes they allege OptumRx violated were not in effect until many years later.[11]  Enforcing the statutes in Counts XI–XXVIII before their effective dates would conflict with the statutes themselves, as well as established principles of statutory interpretation and due process.  *Lazenby v. Mark's Constr., Inc.*, 236 Ill. 2d 83, 94–95 (2010) (quoting *John Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 405 (2009) (courts must "keep[] in mind the general principle that prospectivity is the appropriate default rule")).  Accordingly, even if these statutory claims could survive all of the other reasons for dismissal, the Court should dismiss any claims that predate the laws' effective dates.

## V.   CONCLUSION

For the reasons discussed above, venue is improper in this district and this case should be dismissed.  Even if venue were proper, one out-of-state Plaintiff, KM Network, and two categories of claims should be dismissed for lack of personal jurisdiction.  And even if venue were proper and the Court had personal jurisdiction over OptumRx, Plaintiffs' claims should be dismissed for failure to state a claim.

---

[11] *See, e.g.*, 215 Ill. Comp. Stat. Ann. 5/513b1 (Count VI) (eff. July 1, 2020); A.R.S. § 20-3331 (Count VII) (eff. Aug. 27, 2019); M.D. Ins. Code § 15-1628.1 (Count X) (eff. May 13, 2019); N.Y. Pub. Health § 280-a (Count XXII) (eff. March 10, 2016); 18 V.S.A. § 9473 (Count XIII) (relevant provisions eff. July 1, 2015); Minn. Stat. Ann. § 62W.08 (Count XXVIII) (eff. Aug. 1, 2019).

By: s/Michael J. Nester
Michael J. Nester, #02037211
DONOVAN ROSE NESTER, P.C.
15 N. 1st St., Suite A
Belleville, IL 62220
Telephone: (618) 212-6500
mnester@drnpc.com

Geoffrey M. Sigler, *Pro Hac Vice pending*
Katherine Maddox Davis, *Pro Hac Vice pending*
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Ave, N.W.
Washington, DC 20036-5306
Telephone: (202) 887-3776
gsigler@gibsondunn.com
kdavis@gibsondunn.com

Michael Holecek, *Pro Hac Vice pending*
Brandon J. Stoker, *Pro Hac Vice pending*
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7018
mholecek@gibsondunn.com
bstoker@gibsondunn.com

**Counsel for Defendant OptumRx, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2022, a true and correct copy of the foregoing was filed with the Court using the Court's CM/ECF system and also sent, via U.S. mail, first-class postage prepaid, to:

Keith Short
Keith Short and Associates, P.C.
325 Market Street
Alton, IL 62002
keith@siltrial.com
Attorney for Plaintiffs

Mark R. Cuker
Jacobs Law Group
One Logan Square, Suite 1200
Philadelphia, PA 19103 (215)
mcuker@jacobslawpc.com
Attorney for Plaintiffs

/s/MICHAEL J. NESTER
**MICHAEL J. NESTER**